Good afternoon. I'm going to call the court first district court is now in session. The first division, the Honorable Justice Michael behind me presiding case number two zero dash 1173 people versus Martin Roman. Good afternoon. I apologize, you can tell which one of us had the technology problem, because my background is not like the others. And so, it is me, and I apologize profusely. My computer just would not cooperate this morning. I'm just as Michael Hyman with the uncooperative computer, and I'm on a different one. Now, with me is Justice, really a Chinsky and Justice Carol Walker. We are going to proceed as if we were in the courtroom. Each side has 20 minutes. Mr. Burson you can reserve time for rebuttal to let us know when you introduce yourself, and we will be asking questions please finish whatever you're saying, and then if you would proceed to our question I'd appreciate it. Please introduce yourself. Joshua Bernstein er and STI n for appellant Martin Roman. Good afternoon, Your Honors, Assistant State's Attorney Whitney bond on behalf of the people. Thank you. Any questions before we proceed. Mr. How long do you want for rebuttal. Five minutes should do Your Honor. Thank you. Thank you. Okay, you may proceed. May it please the court counsel. If you strip away all of the co defendants and procedural history of this case it's very very simple. We're on remand. And we know that we know the facts. And we read the record. So, here's my question. Give us your best argument as to why we should read. I will do that Your Honor that's what I intended to do. You don't need to go very far to reverse in this case. In fact, it's, it's very very simple. In his post conviction petition, Mr Roman adequately alleged an arguable case of ineffective assistance of counsel that would be plea counsel in that plea counsel misadvised him about the sentencing range he faced the poor advice of plea counsel was not corrected by the court in its admonishments, or by the state's attorney. At the time, Mr Roman was admonished. And in fact, when you say when you say it wasn't correct. Did the judge know that the his counsel made a error. No, Your Honor, but actually it wasn't correct. Right, but but everybody made an error here counsel told him 60 years, the court told him 60 years had counsel told Mr Roman. This is obviously a hypothetical because it didn't happen but had counsel said hey, the normal range is 60 years but you because of your previous sentence, you should max out at 32 years here, this would be entirely different. You didn't mention another person in the courtroom. The state's attorney's office, they didn't correct it either. Well, that's correct, Your Honor. So everybody in the courtroom who was an attorney. Let it stand. As I said in our brief Your Honor all three lawyers in the courtroom that day, had the wrong sentencing range, and in fact, in their brief the state concedes this twice that that he was misadvised. That is objectively unreasonable to advise your client in a police situation with the wrong with the wrong sentencing range. As far as prejudice goes. Really, Mr Roman said it in his brief, he would have elected to go to trial if he knew his limit was his was 32 years. A plea like what he the plea he entered into in this case sounds good when you think you're facing 60 years. It sounds completely different when you're facing 32 years. And as I said in the briefs. There's the additional factors of your honor Justice Hyman you authored the opinion knocking out the gang evidence that infected the first trial, and there's a still kind of unresolved issue out there with respect to whether there was a Brady violation with Fernando Garcia's testimony whether this whether this testimony actually well, you know, would either lead to a new trial, I, I'm going to just say I don't know the status right now of of Ismael Morales this case but I do know that he is at least at the second stage in post conviction proceedings. And if they have not filed a rule 651. In that case, they will be doing that soon. And that will give us exactly the roadmap for how Fernando Garcia's testimony would affect Mr. Roman's chances at trial, because Morales and Roman face the same issue with Mr. Morales. Whatever that is, we don't need to decide whether that's that isn't really necessary for us to reverse. Correct. I agree with that your honor, it is not. I think the, the effect of the removal of the gang evidence increased. Mr. Roman's chances on retrial, notwithstanding anything else. And therefore, as he says in his post conviction petition, he would have, he would have elected trial if he knew he faced 32 years, but he did not do so. And it's really that simple. And if that's not enough for your honors. There is also counsel's threat to withdraw, but I don't even know if you need to get that far I mean I guess it's the icing on this terrible cake, but the threat to withdraw if Mr Roman went to trial, just compounds the So, in a sense, it kind of affects the prejudice in that, as we said in our brief and as he said in his petition, he thought he'd be facing the state's attorneys alone that day. And I know in their brief the state said well there are all these other things that he could have done. That's true but this is the first stage, and what he alleged was, if I didn't take the deal, I'd be on my own and have to represent myself. That's what he believed at the time he took that's exactly what the state is arguing that he never said anything. When the judge asked him was he pleading guilty freely and voluntarily he said yes he was. He didn't tell the judge that well, my counsel has threatened me that he's going to withdraw from the case if I didn't feel guilty. He went along and that's why the state is arguing that there's no evidence in the record to support the court. You know, Your Honor, it's true he didn't complain. But on the other hand, he didn't know at the time he was pleading that he actually only face 32 years in his petition, he, he pled two things. He later learned that he did not face 60 years, and he pled. He later learned, of course, that he should have there's that counsel should have advised him on a motion to withdraw. And as far as the complaint, without the plea, without the plea he would have, he could have faced 32 years. So the state's argument is that what his counsel got him a good deal here, but the 24 years. Council got him a good deal if it was a 60 year sentence the deal looks very different. If it's a 32 year sentence, first of all, and second of all, Your Honor, you know, as we cited in our brief the levers to see United States is it is an example of a case in which the, and this goes for Padilla versus Kentucky and all of these guilty plea cases, there are considerations beyond mere sentencing now I know in this case it is sentencing, but there's a consideration beyond your chances to win. And he said in his, his petition that he would have taken the chance. And the, he was deprived of the chance to make a knowing decision, whether or not to plead guilty, first of all, because he thought 60 years was the limit. Second of all, because count council threatened to withdraw and he thought he'd be left high and dry, whether that all plays out at the second stage is one is a completely different thing your honors, but right now, where we stand this is a first stage he's made a prima facie case of ineffective assistance of counsel, he's made a prima facie case of exactly what he believed at the time of this guilty plea, and he's made a prima facie case that this arguably is not what he would have done. And that's really what this boils down to. There's a lot of speculation in the state's brief about what could have been and what should have been and and all that. That's for another stage or another proceeding it's not here in pleading, there's nothing in this record that rebuts Mr Romans claims. What about the states. Go ahead. Go ahead. You were I thought you were to go ahead, please. No, no, no, but I'm willing to defer to you as a presiding justice. Okay, well, this, the state's argument, again, is that the, the misadvisement does not rise to the level to create a situation where there's an argument arguable claim of deficiency. We just simply have a misadvisement here that came from allegedly came from counsel because I don't think there's anything on the record that supports counsel haven't advised him of that. So there is a record that the judge said it, and that is just as time and pointed out that that his, his counsel didn't correct the judge and neither did the ASA in the courtroom. But again, that that advisement is not enough. So you want to respond to that. I don't understand that. I'm sorry and I didn't mean to interrupt you. No, you're fine. I don't understand that argument at all. The state sites no case law that says it's effective assistance of counsel to misadvise your client about the sentencing range in a guilty plea proceeding, no case law. And there's no case law that says that, that this is okay. I mean, I get it, it's not in the record that's why this is in a post conviction petition, you have to construe the facts that he's alleging in this in his favor, unless they are rebutted by the You're going to get 60 years if you go to trial, he stands up in court, the judge says, you're going to get 60 years if you go to trial, are you, I'm sorry, you could get 60 years if you go to trial, the state's attorney stands mute counsel stands mute, everybody thought that he could get 60 years. He did not know he could get 32 years, and the state has conceded that 32 years was the limit on based on this record. So, I don't understand where they get this idea that that's reasonable representation, that is an error that goes to the fundamental fact of his guilty plea. He didn't even know the sentencing range that he could face. And there's no case that says that they don't cite anything this is that's just their supposition, respectfully, they have nothing supporting that claim, and there's was wrong. And that's what Mr. Roman had to go with, and he was facing 60 years. If he went to trial according to his own lawyer, and in fact his lawyer told him the state said they would go for 60 years, they would go for the max if he forced them to go to trial again. And, you know, what do you do. You take the plea deal and it seems reasonable until you find out that in fact that's like almost twice as long as what he could have gotten. So, I don't, I don't see how that's reasonable your honor I. It's an error of law and the part of every lawyer in that courtroom. What about the state's response that the trial evidence was overwhelming. The outcome was almost a given. Well your honor in the prior iteration of people versus Martin Roman you yourself said that without the gang evidence in this case the evidence is not overwhelming. It's the evidence of three witnesses who witnessed this allegedly from across the street at one in the morning in the dark with patchy lighting, and even, even with those witnesses. Mr Roman. Had he known it would have been 32 year maximum, which he'd already been sentenced to. He was willing to take that chance again. And even if counsel told as his petition says when counsel told him, he had a chance, he was willing to take that chance. I don't think that's unreasonable. When, if you understand that you're capped at your previous sentence. It's not unreasonable to say let's let's try it, let's go for it. That's, I think that's patent in in the pleading, it's there, it's, it's on the face of the pleading. He would have done it. And that's really what boils down to this is why I'm asking you to reverse three lawyers offer the original offer was 27 years. He rejected that. Then when the 24 years were offered, he accepted it in the state's argument is that it would have been unreasonable at that point to reject the 24 years knowing that he could still get 32. Well, he, he rejected it because his lawyer said, if you don't take this deal I'm going to walk. Justice Walker, I mean, he didn't. He accepted it because as he said, if he went to trial, his lawyer threatened to withdraw and he would be out quoted here petitioner would be on his own and would have to represent himself. And now the state's argument is that there's no evidence in the record that lawyer ever advised him he would walk away, there's no evidence on the record that the lawyer ever said, No, Your Honor, it's not 60 years, the max is 32. Right. You're both of your honors are correct there's no evidence of either of those things, and that that is why this is a matter properly brought up in a post conviction. So, so I can understand I understand why, if somebody is given that if somebody were given the true choice between going to trial and rolling the dice, and maybe being found not guilty or serving the same 32 years that you're already sentenced to 5050 I'd say, All right, let's roll the dice. And we've already said in our, in, in the first case, the evidence is not overwhelming and one witness who heard a voice talking on a cell phone recognize it. If one witness who saw the defendant talking on his cell phone to see him hit anybody. You have one witness who saw the defendant hitting the factory door, but not the victim. So, you know, I would still sort of surprised I mean to call this evidence. Underwhelming I think would be an understatement. At this point, if he knew what his odds were. Now, when the answer 5050 take a trial it's 5050 you're going to be found guilty and not guilty those the ads 5050. That is exactly our point Justice Pachinksi, this, you know, when we said he had nothing to lose in this case. At that point, had he known the maximum sentence he could get which is the sentence he'd already received. There was no downside to going to trial. As you just pointed out. Unless your honors have any other questions. I could talk about this all day, but we ask that you reverse and remand this for further post conviction proceedings to develop the claims and Mr Romans post conviction petition. Thank you. Thank you. This month. Afternoon, your honors me please the court again Assistant State's Attorney Whitney bond on behalf of the people. It's the people's position that on its face this petition does not sufficiently allege that remand counsel misadvised him or created a campaign of pressure, because there has to be something more. You said it doesn't, but you conceded that what the judge. And what happened in the courtroom we've heard the sentence in range is incorrect. Correct. Yes or no, yes or no. Yes. Okay, so if that's incorrect. How does what you just said. We're trying to point out is that this petition on its face is sufficient. Why would it be deficient on his face when he has a transcript before the judge and the judge in the lawyers in the courtroom, gave him the wrong range. How can that be insufficient on its face, I'm just, there's evidence of the transcripts. So, so what what am I missing. Well, what else you're missing are any affidavits to attest to the truth of any of these claims. I mean, yes he did have a verification affidavit, and he had evidence of by way of the transcripts. And as you know, the law says he doesn't need to get a affidavit from the attorney he's saying was incompetent in this case and affected. So, again, I asked you the same question. We would submit what we offered in our opening brief that what he could have possibly offered an affidavit from himself, attesting to when you do that for, why would he need to do that when you have the three lawyers in the courtroom, saying that the range is up to 60 years. Why would I don't understand how you can ignore that. After saying that that is an incorrect admonition from the judge. Right. But what we don't have any sort of attestation that there was any conversations that happened outside of that singular. It doesn't matter. Does it matter, does it matter because we do know. Look, first of all, you will agree that it's a low bar on the first stage. Yes. Okay. So, as a first stage, what we have here is an incorrect by your own admission range. We have his attorney standing mute. We have the ASA standing mute. So, that tells tells me at least that they all understood this to be up to 60 years. So, what more you know what affidavit does he need to say he has presented what the rule provides for first stage to go to second stage. Hasn't he. I mean, what, what you're just saying he needs more. You're not saying he didn't write anything. Are you, are you saying he provided nothing. I know what I'm saying is he needs to provide. I don't believe that a verification affidavit that attests that he is an inmate at Lincoln Correctional and that the facts included in the petition. He knew them to be true. I don't think that suffices as an affidavit. I don't think it's out of the realm of possibility either to ask for your man counsel to provide an affidavit that he to misadvised this. But the Illinois Supreme Court has said it's not necessary that I would expect that it would be a rare occurrence so you're asking him to do you're asking us to affirm on something that the Illinois Supreme Court is rejected. Is that what we're supposed to do. I'm asking you to hold this petitioner to the same standard that we hold all first stage post conviction petitioners. If you had a petitioner who wrote in his petition that I have a witness that would testify to X, Y, and Z, and left it at that, with no accompanying affidavit that wouldn't be enough. There's just a different standard. This is not here we have a transcript. And what I'm saying is that the people's position is that that is not enough, that what we have. You say that is not enough. Are you saying let me try, let me try to be specific. I want to be, you should be very specific. What are they. What I hear you saying they're missing is his own affidavit is that's what missing something that is missing. I'm saying that there are several opportunities for him to provide something more to this. Why does he need to provide that when we have the transcript. Why what rule, what provision, what case says that this transcript is not enough. Give me some authority. I have no authority off the top of my head, or that, but what I would submit to you is that this. What this defendant is arguing is rebutted by the record. All well, all well. Wait, wait, wait, wait, hold on. You just said something that I find confusing. Okay. What, what, what he said is rebutted by the record. What do you. The entirety of his petition is provided by the record, what we have here is a plea. This petitioner was asked, did you plead freely. He's, if there was any sort of misadvisement that he had a concern about or any sort of threatened. The judge used the word threat. He, he asked, are you pleading guilty freely, and he said the question was freedom. The question was freely, having been told. In that corrected, you know what the ranges. So, you know, doesn't ask him whether he was threatened. And even pencil has said, even that that's just this icing on the cake. So you're talking about the icing let's talk about the cake. Okay, that's what I'm trying to talk about the cake. And you have no case law. It says I need he needs anything else. So, now I'm really want to know how we are to get around that and you're, what's your position for us to ignore this first stage situation which seems to follow the law, as it is in the state of Illinois. There's nothing in the record that counsel misadvised him. There was on this record that the trial court made a misstatement. Wait, wait, wait. Council has no has no obligation to correctly judge that gives a totally incorrect us, you even conceded it's incorrect. And the difference when you would you would agree that 32 versus 60 is a difference of 28 years correct. And that's a substantial amount of time to be in prison, 28 years, correct. And so, but what we have is that what was on the record was that there was these ongoing pre negotiations between Council and the state. So, yes, there wasn't a statement, there's nothing that I could argue that was plainly wrong, but let's use our words carefully. You call it a mistake. It's an error. Would you concede, it was air. No error in a misstatement. It was air. Why isn't it an error when the judge says you could get up to 60 years when actually he cannot get more than 32 years why is that not an error. But I don't think this was something that was deliberately done by the trial. I never used. You're using the word deliberately, and you did so in your breathing it in the context of the answer. I'm not saying anybody did anything deliberately. That's why it's called an error. Right, an error doesn't have to be deliberate, but you won't even concede that it was air. What I mean, but I can see that it was a misstatement, I don't believe that statement in an air. I mean, sure. Half and one half dozen and the other. I mean, what is happening in the trial court is being in the trial court, there's a lot of moving parts, and what this case has been up and back and came back again. And I think what the trial court looked at it and saw first degree murder, and just proceeded kind of in a rote sort of manner, I mean, counsel concedes as well that that could have just been a misstatement that this could have just been, you know, part of the in my mind that they're different in the court's mind, then, then I would say that that was just a misstatement. There was a lot of discussion that was happening on this record because we know that he started at 3227 was an offer 24 became the final offer. So there was a lot that was going on behind the scenes, that is not in the record, those three negotiations. So, if there was initial misstatement or miss an initial air of terms, certainly that was worked out, and what we don't have. You say it was worked out that's a very vague. What is it, and what was worked out when you have a, what you call a mistake or error. That what was worked out was the eventual plea and resulting sentence of 24 years, that was what was working out under a umbrella of air. There is, we agreed 24 year difference between going to trial and looking at 60 years or being told the accurate number which is up to 32 years and without the as Council said, without the gang evidence, this is a new ballgame here. And that's what the initial opinion. In this case, said back in 2013. Yes, you would agree that that the opinion, despite what you might say in your brief. At this point, are you still contending that the. It was overwhelming. Not even a close case, are you saying that in light of our decision, which I reread in which is cited by Council, particularly I think it's paragraph 37. How can you say that, that, that in light of paragraph 37 explained it. I, we still stand by position that the evidence was overwhelming that we had. Okay, how do you reconcile that with her. You know, this is a matter of, of being candid with a court. This is a matter of reading words of a judges any judge doesn't matter it's mine or anybody else's, but their words on a paper. And that's what we have to rely on as Council accurately telling us what cases stand for. And you're saying that you reject. What is already part of this case that that decision in our decision paragraph 37 says given the strong credence against street gangs, and the likelihood of that effect, if not the purpose of the gang related evidence was to stir the emotions of the jury, combined with the absence of any relevance to a motive of the witnesses so forth. It wasn't the. It was a close case. So, so to say it was overwhelming, and not even a close case. And then say well that's your position, aren't you just closing your eyes to that opinion. No, I never just struck the court like that. What I would say is that reconcile your statement with what you, I just, I'm lost I can't understand what you're saying. I'm saying is that, in light of the court's opinion that if you take the gang evidence out you still have three eyewitnesses, who knew this defendant. This wasn't a stranger identification. This was somebody when the court said it was a close case, you know, without that evidence. You don't accept it, but you do can see that that's what we said in it for you to say otherwise in light of the record in this case, isn't there something that doesn't follow there. No, I'm not sure if I'm actually following you are you because I don't see the gang evidence in the same light that I am reducting the initial opinion, because I would submit that that is not what I'm what I'm doing at all. I'm just pointing out like I did in my opening brief, that the gang evidence while there if you remove it, we still have three eyewitnesses to this defendant who they knew this wasn't again this wasn't a stranger identification they knew him they don't have to testify how they knew him they knew him from the neighborhood, there doesn't need to be any of the gang evidence brought in, and it is the people's position that this, these eyewitnesses were credible eyewitnesses who knew him from the neighborhood knew his family knew his brother and watched as this horrible incident occurred. They weren't impeached in any substantial way. I know that there is the Garcia letter the immigration letter that has come to light. But like we suggested in our opening brief that it was a very general generic letter, and that the trier fact would be able to, you know, see that letter and have judged it for what it's worth. But, no, I believe the evidence was still was quite overwhelming and I, the defendant, I believe, knew that and saw 24 years as a better opportunity. But no, I'm not disrespecting this court's opinion I just am arguing the state's position that the evidence, based on those witnesses was pretty significant. Okay, and respond before you move on. I want to come back to a different issue here. You, you raise this in your brief, and I believe more than once you raise, you're saying that the issue is that the allegations that the petitioner is making Mr Roman is making are not supported by the record. And there's no case law that supports your argument there, the argument that our Supreme Court has, or I'm sorry, or the issue that our Supreme Court has always raised is that it should that whether or not the information is rebutted by the record, and you seem to flip that to whether or not it's supported on the record. Do you have any case law that you can provide us as support to what you're saying that the information that the petitioners provided, providing must be supported by the record. And I asked the question because very often with these allegations and especially at the first stage. It may even be a situation where there's some new witness that has come along, who says that, you know, he was there he spoke to the police and they because he didn't they didn't like his story they never they never recorded his information into their report never provided anything. And that would never, or I should say rarely be supported by the record. And you're using that argument throughout your brief so help me with that. I think it's. Yes, they're not the same. Do you agree that it's not the same thing. Let's start there, not supported by the problem here, you agree that they're not the same right. I agree that they're not the same. Yeah, that's supported by the record is not the same thing as rebutted by the record, and I think when we're talking about this first stage. You. What we argued was that this defendant had pled guilty, and that's robots, all the claims that he was making us to, you know, what had happened during those negotiations. But I don't go back to your first first question. I don't have the case law that says supported by the record. I don't believe I have it but I would be happy to file another brief on that issue. No, no, we're not. We're not I want to be clear, we're not asking you to file anything. It's just that our Supreme Court's position has always been. The question is whether or not the the allegations are rebutted by the record, and then that may be a basis upon which the trial judge would summarily dismiss the petition, because that the the allegation is rebutted. But there's nothing that says that the allegation is not supported by the record that the trial judge should summarily dismiss the petition. And I just want to make sure that that was probably just a mistake that you made when you when you use the term supported throughout your brief, but but that's okay. I want to come back to something else, because on page 17 of your brief, you, you seem to make the statement that that it was okay for the error to occur, and it's on page 17 I can't tell you exactly what paragraph. I have your brief in front of me, but I'm not looking at it. So, and you, you, you seem to argue that that it was okay for the air, because the trial court aired. Therefore, the, it was okay that the defense attorney Eric by telling him the wrong sentence as well. And I'm not sure that that's an argument that you meant to make that you can take a second look at it it's a real short sentence there maybe two sentences. Is it in fact petitioner can see that it's arguable that remand counsel simply aired and advising petitioner that he could receive a six year sentence. That way you're referring to know it's not there it's good you refer to the truck or judge, I can actually look at it as well. But, and I just wanted to make sure that that again was not what you meant to say there, because it implies that you're saying that because the trial judge air that there could be no error on the part of the defense attorney. Yeah, that would not be something that I would argue and if that is what I misargued. I don't recall doing that but if it's in here then that is definitely not something that I would say is a valuable argument. Okay, thank you. You can continue on. I basically have said what I need to say, it's our position is quite simple it's just that the petition itself wasn't sufficient to survive this stage, and also that the evidence was overwhelming in that, you know, taking. It seems unreasonable that this petitioner would have chosen to roll the dice with the trial then take what was a lower sentence that he initially was sentenced to. If there are no more questions, thank you for your time today. I rest on my brief, and this argument and if there's anything that this court requires more from me I'm happy to provide. Thank you very much. Mr Bernstein. Thank you, Your Honor, I really have nothing to add to my arguments, unless any of your honors. Yeah, I do have a question. What are you looking for today. Are you looking for a new sentencing hearing are you looking for a new trial, ultimately what are you asking the court to do. I think, Your Honor, given the procedural posture it's a first stage summary dismissal of a post conviction. I realized that you're so what you're, you're so what you're saying is you're just simply asking us to send it back for the second stage. Yes, Your Honor, and I'm just taking a step further what are you ultimately looking for. Well, I think this is the issues that Mr Roman races in his petition, I think need to be sussed out and worked out at the second and third stage, and, you know, where it goes from there would determine my ultimate answer to you but I think he deserves a chance to prove these allegations. Unless your honors have any other questions. We ask that you reverse and remand this for a second stage proceedings. Thank you. I want to thank both sides for your briefs and your arguments this afternoon. Appreciate it. We'll take the case under advisement, and a room and we forthcoming. Have a good afternoon to both of you. Thank you. Okay.